IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KRISA KOTORI**<br><br>                    **Plaintiff,**<br><br>vs.<br><br>**ILERA HEALTHCARE LLC,**<br><br>                    **Defendant.** | **Civil Action No. 20-02028**<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiff Krisa Kotori, by and through her attorneys, Bell & Bell, LLP, hereby files the following Amended Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action for an award of damages, punitive damages, attorneys' fees and other relief on behalf of Krisa Kotori, a former employee of Defendant Ilera Healthcare LLC. Ms. Kotori was wrongfully terminated and retaliated against for reporting her concerns of illegal and/or criminal activity and for refusing to engage in what she perceived to be illegal activity by Ilera Healthcare.

2. This action has been brought pursuant to the Pennsylvania Whistleblower Law, 43 Pa.C.S. § 1421, et seq. ("PWL) and the common law of the Commonwealth of Pennsylvania.

3. Defendant removed this matter on diversity grounds to federal court after Plaintiff originally filed in the Montgomery County Pennsylvania Court of Common Pleas.

## PARTIES AND VENUE

4. Plaintiff Krisa Kotori ("Ms. Kotori") is an adult citizen and resident of Philadelphia, Pennsylvania and the United States of America.

5. Defendant Ilera Healthcare LLC ("Ilera" or the "Company") is a Pennsylvania limited liability company, with its corporate headquarters located at 3553 West Chester Pike, #347, Newtown Square, Pennsylvania 19073 and business location at 1099 E. Lancaster Ave., Bryn Mawr, Pennsylvania 19010, where Ms. Kotori was employed.

6. Upon information and belief, the sole member and owner of Defendant is WDB Holding PA, Inc. – a corporation organized and existing under Delaware law with its principal place of business at 489 5th Ave., Floor 29, New York, New York 10017.

7. With respect to the PWL claims alleged herein, at all times relevant hereto, Plaintiff was an "employee" of Defendant within the meaning of the PWL and is entitled to the protections of the PWL.

8. With respect to the PWL claims alleged herein, at all times relevant hereto, Defendant acted as Plaintiff's "employer" within the meaning of the laws at issue in this suit and is accordingly subject to the provisions of said laws.

9. Upon information and belief, Defendant receives government funding from the Commonwealth of Pennsylvania and is accordingly subject to the PWL.

10. This cause of action arose out of transactions or occurrences that took place in whole or in part in the Eastern District of Pennsylvania.

11. Venue is appropriate in this Court.

12. This Honorable Court has personal jurisdiction over the Defendant.

**FACTS**

13. Ms. Kotori is a highly skilled accountant with a Master's degree in Forensic Accounting and several years of experience working as an accountant, including several years as an Accounting Instructor at a local business school.

14. Ilera was founded in 2016 and is a grower, processor, and medical marijuana dispensary operator in Pennsylvania.

15. On or about August 26, 2019, Ms. Kotori began her employment with Ilera as an Accounting Manager.

16. While employed by Ilera, Ms. Kotori carried out her duties in accordance with the highest ethical and moral standards and performed her job in a dedicated and excellent manner.

17. Despite her exemplary performance and dedication to her work, Ms. Kotori was terminated in retaliation for reporting her concerns of criminal and/or illegal activity by Ilera, for indicating that she would discuss her concerns with the appropriate sources, and for refusing to engage in and/or cover up what she perceived to be such illegal activities by Ilera.

18. Whilst employed by Ilera, Ms. Kotori observed practices at Ilera that she believed might result from illegal conduct.

19. Specifically, Ms. Kotori observed improprieties in recordkeeping that suggested that the Company had engaged in tax evasion, or that agents of the Company were stealing and/or embezzling.

20. Among other things, the Company sells various products containing cannabis, including cannabinoid medicine, Tetrahydrocannabinol ("THC") distillate,

medical marijuana, and extracted oils.

21. The Company's policy mandates that the sale of each product be logged into the system, both to reflect the resulting incoming revenue and to reflect the loss of product from inventory.

22. On or about October 18, 2019, Ms. Kotori received an unusual email at work indicating that the Company's gross income went up $14,000.

23. Upon further investigation, Ms. Kotori realized that the Company had sold $14,000 worth of product(s) which had not been logged into the system and which had not been marked as sold.

24. Failing to log sales could further the goals of supporting the underreporting of revenue to reduce owed taxes, or hiding incoming revenues so that they could be retained by the salesperson.

25. Ms. Kotori felt extremely uncomfortable and had significant concerns regarding the apparent theft or other unlawful activity relating to the loss of several thousand dollars.

26. Accordingly, Ms. Kotori refused to cover up the missing funds, but instead, reported the missing funds to her supervisor and/or an agent of Ilera and indicated that she planned to discuss the issue with the appropriate sources.

27. Meanwhile, at or around the same time, the Company had been engaged in merger discussions with Zelda Therapeutics Limited ("Zelda Therapeutics"),[1] which

---

[1] Upon information and belief, Ilera Healthcare LLC had created a "spin off" company, Ilera Therapeutics LLC ("Ilera Therapeutics"). In March 2019, Ilera Therapeutics entered into a strategic partnership with Zelda Therapeutics. In October 2019, Zelda Therapeutics

4

transaction likely would not have occurred and/or would have been rescinded upon evidence of impropriety or unlawful activity at Ilera.

28. Only three days after her discovery, reporting and refusal to participate in or support any illegal act, on October 21, 2019, Ms. Kotori was terminated.

29. Ms. Kotori was terminated at the very time of the meeting scheduled to discuss the particulars of the missing $14,000.

30. The pretextual reason provided for her termination by Ilera was that Ms. Kotori allegedly engaged in "Willful Misconduct" in her use of the Company-provided Internet.

31. Specifically, Ms. Kotori was told that she was being terminated for viewing pornography on a Company computer during work hours.

32. Ms. Kotori had never viewed any pornography of any sort at any time on any computer during her employment, including, but not limited to, her Company computer.

33. The reason provided for Ms. Kotori's termination is merely pretext for the real reason for her termination – retaliation for reporting, indicating her plans to discuss with appropriate sources, and speaking out against and refusal to participate in the Company's illegal activity relating to the missing funds.

34. Ms. Kotori was given no proof, documentation or any form of evidence whatsoever demonstrating that she had, in fact, viewed pornography on a Company computer.

35. Ilera provided only a list of internet sites allegedly visited by Ms. Kotori

---

proposed to acquire 100% of Ilera Therapeutics through an all-scrip transaction to create a global medicinal cannabis company called "Zelira Therapeutics Limited."

while at work.

36.     Ilera did not provide any dates, times, or duration of any alleged visit to any inappropriate website.

37.     Ms. Kotori had never visited or viewed any of the alleged internet sites claimed by the Company.

38.     Ms. Kotori was not given any opportunity to refute the false claims.

39.     Notably, throughout her employment, Ms. Kotori had frequently taken breaks during the workday and left her login information for her work computer directly on her desk.

40.     Thus, if in fact any pornography websites had been viewed on her computer, any person at the Company could have viewed them on her computer while she was out on a break, without her knowledge.

41.     Ms. Kotori was further informed that her termination was effective immediately and that the decision was "not reversible."

42.     The real reason for Ms. Kotori's termination was retaliation for Ms. Kotori's discovery of the missing $14,000 payment, report of her discovery and indication of plans to discuss the issue with appropriate sources, and refusal to cover up, ignore or engage in the criminal activity relating to the missing funds.

43.     Defendant's termination of Ms. Kotori is highly suspicious given its extremely close proximity in time -- a mere three days later -- from her discovery of the missing $14,000 payment, report of her discovery, and indication that she would be discussing her concerns with the appropriate sources.

44.     Defendant's termination of Ms. Kotori is further suspicious given that Ms.

Kotori was amply qualified for her position, had been performing excellently, and had never received any advance notice or warning regarding any allegations of inappropriate activity.

45. Defendant's termination of Ms. Kotori is even further suspicious given that Ms. Kotori was not given any evidence of her allegedly improper computer use and was not given any chance to defend herself or refute the false accusations.

46. Ms. Kotori has suffered significant financial losses, including lost wages and other benefits of employment, as a direct and proximate result of the actions and inactions of the Defendant.

47. As a result of the Defendant's conduct described herein, Ms. Kotori has incurred a significant obligation for attorneys' fees and costs of bringing this action.

48. As a result of Defendant's conduct described herein, Ms. Kotori has suffered and continues to suffer significant emotional distress, including, but not limited to, embarrassment, humiliation, and harm to her personal and professional character and reputation.

49. Defendant and its agents acted with knowledge of, or in reckless disregard of the probability that their actions and inactions would cause Ms. Kotori to suffer emotional distress.

## COUNT I
### Wrongful Termination

50. Plaintiff Krisa Kotori repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

51. Ms. Kotori had a duty to comply with the rules and reporting requirements contained in the Pennsylvania Medical Marijuana Act ("MMA"), Title 28 of the

Pennsylvania Code.

52. Ms. Kotori opposed and refused to participate in unethical, illegal and/or fraudulent activity engaged by Defendant Ilera, as alleged herein.

53. Defendant Ilera terminated Ms. Kotori in retaliation for her discovery, reporting, opposition to and refusal to engage in unethical, fraudulent and/or illegal activity in violation of Pennsylvania public policy and specifically because it believed she was going to adhere to her MMA reporting requirements regarding some or all of the following obligations:

A. **Inventory Data and Tracking**; A dispensary must implement an electronic inventory tracking system which shall be directly accessible the Dept. of Health that electronically tracks all medical marijuana on a daily basis. Such tracking shall include all of the following information:

   a. Tracking of all medical marijuana that includes information that verifies the validity of an identification card presented by the patient or caregiver. MMA §701(a)(2).

   b. A daily log of each day's beginning inventory, amounts purchased and sold, disbursements and ending inventory. The tracking system shall include prices and amounts collected from patients and caregivers. MMA §701(a)(3).

   c. A system for recall of defective medical marijuana. MMA §701(a)(4).

   d. Tracking of dispensing, including amounts, pricing and amounts collected from patients and caregivers. MMA §701(b)(5).

   e. A dispensary shall maintain inventory in its electronic tracking system regarding inventory dispensed to patient or caregiver. 28 Pa. Code §1161.32(a)(2).

   f. A dispensary shall establish inventory controls and procedures to conduct monthly inventory reviews and annual comprehensive inventories of medical marijuana at its facilities. 28 Pa. Code §1161.32(b)

    B. **Reports**

        a. Every three months the dispensary must provide information to the Dept. of Health, including the total amount and dollar value of medical marijuana sold in the three month period. MMA §701(d)(5).

    C. **Pricing and Quantity Sold**

        a. There are also various rules regarding pricing (the Dept. of Health and the Department of Revenue monitors prices charged by dispensaries and may implement a cap if unreasonable or excessive- MMA §705) and quantities (receipt of medical marijuana from a dispensary may not exceed a 30-day supply of individual doses - MMA §405).

    D. **Reporting Adverse Loss**

        a. An applicant to operate a dispensary is under a continuing duty to report to law enforcement, within 24 hours, any loss or theft of medical marijuana. MMA §606(a)(2)

        b. There is a duty to report at any time during the permit period, immediately upon becoming aware of any adverse loss (loss, discrepancy in inventory, diversion or theft of medical marijuana) from a facility operated by the medical marijuana organization (includes by definition dispensaries). 1141.38(a)(3).

54. The above-described conduct of Defendant, in terminating Ms. Kotori, represents wrongful termination under the common law of the Commonwealth of Pennsylvania.

55. As the direct and proximate result of Defendant's wrongful termination of Ms. Kotori in violation of Pennsylvania law and public policy, Plaintiff Krisa Kotori has sustained loss of earnings, severe emotional and psychological distress, embarrassment and humiliation, damage to her personal and professional character and reputation, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

56. Defendant and its agents acted with knowledge of, or in reckless disregard of the probability that their actions and inactions would cause Ms. Kotori to suffer emotional distress.

57. Defendant's actions in terminating Ms. Kotori were intentional and willful, and warrant the imposition of punitive damages.

## COUNT II
### Pennsylvania Whistleblower Law, 43 Pa.C.S. § 1421, et seq.

58. Plaintiff Krisa Kotori repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

59. While performing her accounting duties, Ms. Kotori became aware of certain wrongdoings being committed by Ilera, which was supposed to be logging each sale into the system, but instead indicated that Ilera was engaged in criminal and/or illegal acts relating to a missing $14,000 payment.

60. Ms. Kotori reported her observations and concerns to her supervisor and/or an agent of the Company and indicated that she would discuss these concerns with the appropriate sources.

61. In retaliation for her discovery, report, intent to expose Ilera and refusal to engage in and/or cover up the criminal activity, Defendant Ilera terminated Ms. Kotori, in violation of the Pennsylvania Whistleblower Law.

62. As the direct and proximate result of Defendant's violation of the Pennsylvania Whistleblower Law, Plaintiff Krisa Kotori has sustained loss of earnings, severe emotional and psychological distress, embarrassment and humiliation, damage to her personal and professional character and reputation, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

63. Defendant and its agents acted with knowledge of, or in reckless disregard of the

probability that their actions and inactions would cause Ms. Kotori to suffer emotional distress.

## PRAYER FOR RELIEF

64. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

**WHEREFORE**, Plaintiff Kotori respectfully requests that this Court enter judgment in her favor and against Defendant and Order:

a. Appropriate equitable relief;

b. Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendant compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

d. Defendant pay Plaintiff punitive damages;

e. Defendant pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendant pay Plaintiff's costs of bringing this action and her attorneys' fees;

g. Plaintiff be granted any and all other remedies available pursuant to relevant laws; and

h. Such other and further relief as is deemed just and proper.

## **JURY DEMAND**

65. Plaintiff hereby demands trial by jury as to all issues so triable.

                                           Respectfully submitted,

                                           BELL & BELL LLP

By:    */s/ James A. Bell, IV*
                                           James A. Bell, IV, Esquire
                                           Attorney I.D. No. 81724
                                           Christopher A. Macey, Jr., Esq.
                                           Bell & Bell LLP
                                           1617 John F. Kennedy Boulevard
                                           Suite 1254
                                           Philadelphia, PA 19103
                                           (215) 569-2500

                                           *Attorneys for Plaintiff*
                                           *Krisa Kotori*

Dated: June 17, 2020